**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| PAULA MICHELLE GUZMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-190-NAB |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Paula Michelle Guzman ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* ("the Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 7). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

**I.   PROCEDURAL BACKGROUND**

In March 2018, Plaintiff applied for DIB, alleging that she had been unable to work since February 19, 2018, due to breast cancer, fibromyalgia, scleroderma, and extreme fatigue and pain. (Tr. 71, 184). Her application was initially denied. (Tr. 84-88). Plaintiff filed a Request for Hearing

---

[1]   Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

by Administrative Law Judge ("ALJ") (Tr. 89). After a hearing, the ALJ issued an unfavorable decision on September 10, 2019. (Tr. 9-19). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council on October 14, 2019 (Tr. 141-44), but the Appeals Council declined to review the case on July 17, 2020. (Tr. 1-3). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

As to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties.

## II.   FACTUAL BACKGROUND

At the July 18, 2019 hearing before the ALJ, Plaintiff testified as follows. Plaintiff was 47 years old, married with two-children living in the home. (Tr. 32). Her husband does not work and is on Supplemental Security Income for his physical disability. (Tr. 33-34). Plaintiff has a driver's license with no restrictions or limitations other then she wears glasses. (Tr. 34). She has a Bachelor of Arts degree and worked at Proctor & Gamble from 1999 to 2018. (Tr. 34, 36). She performed several different roles such as planning production lines, administrative role for warehousing, operations, before eventually moving to a lighter duty role. (Tr. 36-39).

Plaintiff testified that she has a lot of lifting restrictions and that she cannot lift anything over 10 to 20 pounds. (Tr. 41). She cannot do anything repetitive with her hands because she had lymph nodes removed in both arms, and she also cannot do any crawling or "shoving stuff around" pushing things anything over 20 pounds. (Tr. 41-42). She has neck pain, which comes and goes depending on if she sits in a certain position too long and gets stiff. (Tr. 42). Her neck pain is also caused by overdoing anything or being overly active, which causes it to go from pain to numbness. (Tr. 42). She previously received injections for the pain and had physical therapy. (Tr. 43). Her

back pain is similar to the neck pain. (Tr. 44). A surgeon did tell her that she was not eligible for surgery on her neck or back. (Tr. 45). Regarding her fibromyalgia, she is on medication and seeing her doctor. (Tr. 45). Her medications do provide relief, as she can tell when she does not take them. (Tr. 45). Plaintiff also stated she has a lot of sleep issues, first trying Xanax but that made it worse, so she was trying different things. (Tr. 51). She did previously take Adderall help with energy, but she stopped she could not sleep and make her feel "edgy." (Tr. 51).

Plaintiff also described that the "fog" that she really struggles with too and thinks it is caused by not sleeping, her medications, and her fibromyalgia. (Tr. 54). She really struggles with the memory issues that it causes. (Tr. 54). She indicated that she forgets "[e]verything" such as her keys and words. (Tr. 54). Plaintiff also stated that she believes she has had this "fog" for a lot longer than she realized because she had issues with it while she was working. (Tr. 54). Plaintiff also described how her hands swell a lot and her fingers get really stiff. (Tr. 57). She also stated how she gets headaches and how sometimes they feel like sinuses, but occasionally turn into migraines. (Tr. 62). She gets headaches at least once a week and the migraines occur at least a couple times a month and takes Excedrin for them. (Tr. 62). When she gets a migraine, she goes to a dark room and gets away from the light. (Tr. 62).

She is able to dress and bathe herself, her husband cooks because "he likes to" and "doesn't like [her] cooking." (Tr. 46-47). She does the dishes maybe two times a week, her husband mostly does the laundry, but she does help fold it, and she does other light duties like dusting. (Tr. 47). Plaintiff cleans the toilets and bathrooms about once a week, as long as it does not require getting on her knees or bending. (Tr. 48). She does take care of her flowerpots by watering them occasionally and does not do much of the shopping. (Tr. 48). Socially, Plaintiff goes to church every other week and the kids come over. (Tr. 49). Her two children living at home play basketball,

3

but she only goes to a couple of the games as she does not like sitting on the bleachers. (Tr. 49). Plaintiff has a dog that recently had puppies, which they kept one of the puppies. (Tr. 50). She feeds the dogs and helped with potty training. (Tr. 50).

### III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental

4

impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

 Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

5

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

## IV. THE ALJ'S DECISION

Here, the ALJ applied the five-step analysis. (Tr. 11-19). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 19, 2018, the alleged onset date. (Tr. 11). At step two, the ALJ found that Plaintiff had the severe impairment(s) of degenerative disc disease of the lumbar, cervical and thoracic spines; fibromyalgia with fatigue and chronic pain; obesity; and undifferentiated connective tissue disorder/positive ANA. (Tr. 11). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 12).

> The ALJ found that Plaintiff had the following residual functional capacity ("RFC"):
>
> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b). [She] can lift or carry 10 pounds frequently and 20 pounds occasionally. She is able to walk or stand for 6 hours in an 8-hour workday and sit for up to 6 hours in an 8-hour workday. [Plaintiff] can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She can occasionally balance and stoop, but never kneel, crouch and crawl. [She] should avoid all hazards including the use of moving machinery and exposure to unprotected heights. [Plaintiff] can frequently reach in all directions except overhead, which would be occasional bilaterally.

(Tr. 13). At step four, the ALJ found that Plaintiff is able to perform her past relevant work as a production clerk at the sedentary position because this work does not require the performance of work-related activities precluded by her RFC. (Tr. 17). Although the ALJ found Plaintiff capable of performing past relevant work, he made alternative findings at step five. Alternatively, at the

6

fifth and final step of the sequential inquiry, after considering Plaintiff's age, education, work experience, and RFC, the ALJ relied on the testimony of the vocational expert and found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform (Tr. 18), such as bench assembler, mail clerk, and office helper. (Tr. 19). The ALJ concluded that Plaintiff "has not been under a disability . . . from February 19, 2018, through the date of th[e] decision." (Tr. 19).

## V. DISCUSSION

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es]

not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

Plaintiff claims that the ALJ's decision is not supported by substantial evidence and he committed reversible error on several grounds: (1) finding Plaintiff's "fibro-fog" or cognitive conditions and headaches were not severe impairments; (2) failing to incorporate Plaintiff's cognitive deficiencies in the RFC assessment; 3) discounting Plaintiff's treating physician, Richard DiValerio, M.D. and finding the opinion of Jaime Foland, M.D.'s opinion more persuasive than Dr. DiValerio, which resulted in an incorrect RFC; and 4) discounting Plaintiff's testimony. (Doc. 21). Responding, the Commissioner asserts that the ALJ's decision is supported by substantial evidence because the ALJ 1) properly found that Plaintiff's subjective allegations were inconsistent with the evidence as a whole; and 2) properly evaluated the medical opinion evidence. (Doc. 26).

As described above, this Court's role is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 401; *Pate-Fire*, 564 F.3d at 942; *Estes*, 275 F.3d at 724.  So long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because

8

the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

The Court has reviewed the entire transcript and the parties' briefs. Based on a careful review of the record, and for the reasons stated in the ALJ's well-reasoned opinion and in Defendant's brief, the Court finds Plaintiff's arguments on appeal to be without merit and further finds that the record as a whole reflects substantial evidence to support the ALJ's decision. *See Sledge v. Astrue*, 364 Fed. App'x 307 (8th Cir. 2010) (district court summarily affirmed the ALJ).

The Court acknowledges that the record contains conflicting evidence, and the ALJ could have reached a different conclusion. However, this Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

### VI. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief is **DENIED**. (Docs. 1, 21).

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED.**

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of September, 2022